# DECISIONS

# SUPREME COURT OF MISSOURI.

## FOURTH JUDICIAL DISTRICT,

### SEPTEMBER TERM 1839.

---

## DICKEY and others v. MALECHI.

1. The 10th sect. of the act concerning wills and testaments of Feb'y 19th 1835, (see R. C. 1825, p. 792,) giving to the circuit court jurisdiction of the probate of wills in certain cases, is not inconsistent with the 6th section of the act concerning courts of 7th Jan'y 1825, (R. C. 1825, p. 270) providing, that the several courts of probate shall have exclusive original jurisdiction in all cases in relation to the probate of last wills and testaments, &c." and the 4th sect. of the act of Jan'y 2nd 1827 by which the probate court was abolished, and all its jurisdiction transferred to the county court

2. The circuit court, in entertaining a petition to establish a will, which has been rejected by the county court, does not exercise any original jurisdiction. The legislature may provide other modes, besides the ordinary form of appeal, by which the controlling power of the circuit court may be exercised, and in the 10th sect. of the act concerning wills and testaments, (R. C. 1825, p. 792,) they have made such provision.

3. Whether a will is destroyed before or after the death of the testator, if destroyed without his knowledge or consent, it does not cease to be his will, and its contents may be established by competent proof.

4. One witness is sufficient to establish the contents of a lost will.

5. Probate may be granted of so much of a will as can be proved.

6. The rule, that when a demurrer is over ruled and not withdrawn it remains on the record a confession of the facts set forth in the pleading demurred to, does not apply where the court does not give judgment on the demurrer but suffers the parties to go before a jury on issues made up under the direction of the court, such subse-

M

SEPT. TERM
1839

Dickey and
others
vs.
Malechi.

quent action of the court amounts to an implied withdrawel of the demurrer.

7. The 10th sect. of the act of 1825, concerning wills and testaments, providing that the verdict of the jury shall be final as to the facts, precludes the Supreme Court from enquiry into the sufficiency of the evidence to sustain the verdict of the jury, in proceedings under that section; but as in other cases, if the court permit illegal testimony to go to the jury, the Sup. Court has power to correct such error.

8. The introduction of incompetent testimony, is as much an error of law as the giving of wrong instructions, and it is a matter which the Sup. Court will look into.

9. A devisee, who is also heir at law, is a competent witness to establish the contents of a will lost or destroyed, when he has no interest in the event, or when the establishment of the will is against the interest he would have as heir.

Opinion of the court delivered by Napton Judge.*

One Antoine Simmino of St. Genevive County, about the 5th of January 1833, made his last will and executed it according to law, in the presence of two witnesses John Findly and John Blital Beauvais, and died about four or five days after making his said will. John Campbell and Ebenezer Dickey, who had married sisters of Simmino, were appointed Executors by the will. Immediately after the execution of the will by Simmino, who was proved to have been of disposing mind at the time, he handed the will to Campbell and requested him to place it in his (Simmino's) pocket book, and put the pocket book in his (Simmino's) desk, which was in the room where he lay. Campbell did as he was directed: but on the morning after the death of Simmino; Campbell and Dickey, the executors named in the will, went to Simmino's house to take possession of the will, but could not find it; nor has it ever been produced since. There was proof conducing to show that the will was in existence, on the evening before the testator died, and also on the morning after, in the course of which it disappeared. It also appears from the testimony, that the provision of the will was in accordance with the previously fixed intentions of the testator frequently expressed to various individuals.

*Judge McGirk absent during the present term of this Court.

In January 1833, Ebenezer Dickey took out letters of ad-
ministration upon the estate of Simmino, and proceeded to
act under the same.   About the first of March 1834, Francis
Malechi, to whom a considerable real and personal proper-
ty had been left by the will, by his Guardian Ichabod Sar-
gent presented his petition to the County Court of St. Gen-
evieve County, praying that the paper writing annexed to
his petition, purporting to be the substance of the will of
Simmino, might be admitted to probate, and calling on the
heirs at law to shew cause &c. and requiring them to an-
swer on oath touching the premises.  The cause came on to
a hearing in the County Court, and that Court adjudged
that there was no such last will and testament of Simmino
as Malechi in his petition had alleged.

In June 1836, the defendant in error, Francis Malechi,
by his guardian, filed his petition in the Circuit Court, pray-
ing to have the will established, reciting the rejection of the
same by the County Court, and citing the heirs at law to ap-
pear.   The heirs at law, plaintiffs in error, appeared and
plead first to the jurisdiction of the Court, alledging substan-
tially, that the matters in the petition had been fully adju-
dicated in the County Court, and that, that Court had ex-
clusive jurisdiction.   To this the petitioner demurred, and
the Court sustained the demurrer.   The heirs at law then
demurred to the petition, which demurrer was overruled:
and afterwards they put in a plea in bar grounded on the
former adjudication by the County court; to which plea,
plaintiff in error demurred, and the demurrer was sustained.
The case was then submitted to the jury, upon an issue
made up by the parties under the direction of the court; and
a verdict was found for the petitioner: a new trial was
granted at the instance of the defendants in error, and an-
other issue made up, and upon that issue the jury found for
the petitioner the will as annexed to his petition.   A mo-
tion was made by the heirs at law for another new trial,
and in arrest of judgment, both of which were refused, and
the heirs at law have appealed to this court.   There were
four bills of exceptions taken on the trial of the issues in the
circuit court containing the entire testimony; which seems
to have consisted altogether of depositions. These depositions

SEPT. TERM
1839.

Dickey and
others
vs.
Malechi.

were taken by consent of parties, waving any exceptions to their formality, as to time, place, notice &c.; but the plaintiffs in error, reserving to themselves, the privilege of objecting to the testimony on the trial for incompetency or irrelevancy.

The provisions of the will were established by the testimony of Joseph D. Grafton, who drew it up; neither of the subscribing witnesses being privy to its contents. The deposition of Ebenezer Dickey and John Campbel, the two executors named in the will, and who had married sisters of the deceased; were also read in evidence, together with so much of the affidavit of Ebenezer Dickey, as related to his belief in the existence of a will, and that after the most diligent search, it could not be found. Objections were taken to the reading of the depositions on the ground of incompetency and irrelevancy; and to the deposition of Ebenezer Dickey, because he was a party to the cause. After closing the testimony, the defendants asked the court for the following instructions to the jury.

"1. That if they do not believe that the said supposed will "existed at, and after the death of the said Antoine Simmi-"no, they must find for the defendants.

"2. That if they believe that the supposed will was lost, or "destroyed, before the death of the said Antoine Simmino, "by his consent, connivance or direction, they must find for "the defendants.

"3. That unless they believe the said paper purporting to be "the last will and testament of Antoine Simmino, was sign-"ed by said Antoine Simmino, with a full knowledge of all "its provisions, or by some person for him by his directions, "they must find for the defendants.

"4. That if the said supposed will was lost, or destroyed, "two witnesses who read the will prove its existence at "and after the death of the testator, remmembei its contents "and depose to its tenor, are necessary to establish the same.

"5. That in the event of the loss or destruction of said "will, it will require the testimony of two witnesses to es-"tablish the contents thereof, and that one witness is not "sufficient.

SEPT. TERM
1839.

Dickey and
ethers
vs.
Malechi.

"6. That the whole provisions of the will must be estab-lished, and not a part only, and if the jury are satisfied that the facts proved establish a part only of the provisions of the will, they must find for the defendants.

The court gave the second and third instructions asked. and refused to give the first, fourth, fifth and sixth instructions, and in lieu thereof instructed the jury, that one witness was sufficient to establish the contents of a will, after the excution of the will has been proven by two subscribing witnesses, and also that they might find such parts of the will as were proved without finding any thing in regard to the residue, and also that it was not necessary to prove that the will existed at, or after the death of the testator.

Defendants excepted to the giving of the several instructions given, and the refusal to give those asked for, and after the verdict of the jury for the petitioner, moved for a new trial which was refused, and afterwards in arrest of judgment, which was also overruled.

The appellants have made various points, on which they rely for a reversal of this judgment, but it is believed that though couched in different terms, and presented under a variety of aspects, they are substantially as follows.

1. That the circuit court had no jurisdiction over the subject matter presented in the petition of Francis Malechi; but that the jurisdiction was exclusively in the county court.

2. That the circuit court erred in giving improper instructions, and in refusing those asked for by defendants.

3 That the court admitted improper and incompetent testimony on the trial.

*First.* The petition of Malechi was founded on the 10th section of the act respecting wills, (rev. co'25 p. 792,) this section provides that, "where any will is exhibited to be proved, (in the county court) the court or clerk may immediately receive the proof and grant a certificate of probate; or if such will be rejected, a certificate of rejection. If any persons interested shall, within five years thereafter appear, and by his petition to the circuit court of the proper county, contest the validity of the will proved; or pray to have a will proved that has been rejected, an issue shall be made

The 10th
section of the
act con-
cerning wills
and testa-
ments of Feb.
19th 1825, (R.
C. 1825, p. 7-
92,) giving to
the circuit
court juris-
diction of the
probate of
wills in cer-
tain cases, is
not inconsis-
tant with the
6th sect of

SEPT. TERM
1839.

Dickey and others
vs,
Malechi

the act concerning courts of 7th Jan'y 1825, [R. C. 1825, p 270] providing that the several courts of probate, shall have exclusive original jurisdiction in all cases relative to the probate of last wills & testaments &c. and the 4th sec. of the act. of Jan. 2d 1837, by which the probate court was abolished and all its jurisdiction transferred to the county court.

up whether the writing produced be the will of the testator or not, which shall be tried by the court, or by a jury, if either party require it.

The objection urged to the exercise of jurisdiction in this case, rests on the provision of the act of 1825, by which, the courts of probate were invested with exclusive original jurisdiction in all cases, relative to the probate of last wills and testaments, the granting letters testamentary, and repealing the same &c. and upon the act of 2nd Jan'y 1827, by which, the probate court was abolished and all its jurisdiction transfered to the county court.

I do not see that the circuit court in entertaining the petition of Malechi, did excercise any original jurisdiction. The respective provisions of the two acts above recited are entirely consistent with each other. The legislature may undoubtedly provide other modes besides the ordinary form of appeal, by which the controlling power of the circuit court may be exercised, and in the 10th section of the act respecting wills and testaments, they have made such a provision. The recital in the petition of the rejection of the supposed will by the county court, with the annexation of the record of the judgment of the county court proving that fact was sufficient to give jurisdiction to the circuit court. The judgment of the county court; in which they found that no such will as the paper writing presented to them existed, was a virtual certificate of rejection, sufficient to authorise the petitioner to proceed under the 30th section, and demand a review of that judgment in the circuit court. The cicuit court did not therefore err in overruling the demurrer to the petition, and in sustaining the demurrers to the pleas of the defendants.

The circuit court in entertaining a petition to establish a will which has been rejected by the county court, does not exercise any original jurisdiction. The legislature may provide other modes, besides the ordinary form of appeal, by which the controlling power of the circuit court may be exercised, and in

Second. The first instruction asked for by defendants, and refused by the court, was, that if the jury do not believe that the said supposed will existed at, and after the death of the said Antoine Simmino, they must find for the defendants. This instruction was very properly refused by the court, whether the will was destroyed before, or after the death of the testator: if it was destroyed without his knowledge, or consent, it did not cease to be his will, and its contents could

be established by competent proof. The cases cited at the bar in support of the principle laid down in this instruction have not been produced, but I apprehend that the courts have never gone farther than to declare that proof of the non existence of a will before the death of the testator might be presumptive evidence of its revocation and throw the burthen of proof on the party setting up the will, it required satisfactory proof of its loss or destruction. But the principle laid down in the insructions asked, would open the door to knavery and fraud, and place it in the power of the dishonest to frustrate that disposition which every man has a right to make of his own property. Here the court gave the second insruction asked, which embraced the true law, and which was much more applicable to the evidence, than the first could have been, admitting it to have been abstractly true. The testimony of Dickey, who was named in the will as one of the executors, was that he saw the will about sun set, of the evening preceeding the morning when Simmino died: that he was with Simmino from the time he last saw the will until Simmino died; and during that time, Simmino expressed no dissatisfaction with the will, indeed, said nothing relating to it, and that Simmino could not have destroyed the will without his knowledge. The evidence of Findley, one of the subscribing witnesses was that Campbell, one of the executors named in the will, in a conversation had with witness on the morning of the funeral of the deceased, informed witness, that the will was in existence: that Simmino had made no alteration in the will, but that it remained the same as it was drawn by Mr. Grafton, and witnessed by him, Findley. Dickey also testified that on the day after the funeral, when he and Campbell went to get the will, for the purpose of proceeding under it, they were unable to find it and Campbell observed to him, "he wished he (Dickey) had come sooner, it would have saved trouble, as the will could not have been gone above half an hour"; Findley also testified that he heard Bazil Simmino, a brother of the deceased, say, with an oath, that his sister, the wife of John Campbell, would give him the will, and he would destroy it; giving as a reason for its destruction, that the will was "ungrateful"

SEPT. TERM. 1839.

Dickey and others vs. Malechi.

the 10th sect. of the act concerning wills and testaments, (R C. 1825, p. 7-92;) they have made such provision.

Whether a will is destroyed before or after the death of the testator, if destroyed without his knowledge or consent, it does not cease to be his will, and its contents may be established by competent proof.

SEPT. TERM
1839.

Dickey and
others
vs.
Malcchi.

towards the family of Antoine Simmino; as it gave the greater part of his property to a half negro.

Upon this state of evidence, the instruction given was surely strong enough for the defendants, "that if they believe that the supposed will was lost or destroyed before the death of Antoine Simmino by his consent, connivance or direction, they must find for defendants."

One witness is sufficient to establish the contents of a lost will.

The fourth and fifth instructions are in substance, that two witnesses are necessary to establish the contents of a lost will. This point was expressly adjudicated upon a review of the authorities by this court in the case of Graham and others vs. O'Fallon ex'r of Mullanphy, 4 Mo. Rep. 601. There was no error in refusing these instructions.

Probate may be granted of so much of a will as can be proved.

The next instruction, the refusal of which is complained of, was that the whole provisions of the will must be established and not a part only and if the jury are satisfied that the facts proved establish a part only of the provisions of the will, they must find for the defendants. This point has also been settled by this court in the case of Jackson vs. Jackson and others 4 Mo. Rep. 211, in which the court held that so much of the will as can be proved may be admitted to probate.

*Third.* The only point remaining for consideration is relative to the admission of improper testimony. It is urged by counsel for defendant in error, that inasmuch as the defendant below demurred to the petition, and the demurrer was overruled and never withdrawn, the demurrer remains on the record a confession of the facts of the petition, and this court is precluded from inquiring into the testimony either as to its sufficiency or legal admissibility. This was the strict rule of law in England and may be so here, but

The rule, that where a demurrer is overruled and not withdrawn, it remains on the record a confession of the facts set forth in the pleading demurred

I apprehend that where the court does not give judgment on the demurrer, but proceeds to suffer the parties to go before a jury on the issues made up under the direction of the court it amounts to an implied withdrawal of the demurrer and it is too late now for the defendant in error to rely on the technical advantage of which he might possibly have availed himself in the circuit court. It would be allowing him to take advantage of his own laches for had he moved

for a judgment on the demurrer in the court below; the opposite party would no doubt have asked and obtained leave to withdraw their demurrer, such being I believe the uniform practice in this state, restricted only by the power of the court to impose terms on the party asking for a leave to withdraw.

It is also urged, that as there were two verdicts in this case for the petitioner, and consequently one new trial granted, the law in relation to the granting of a second new trial, by which the court is restricted to cases where the jury have misbehaved or have erred in matters of law, is applicable to the reviewing powers of this court. The statute under which this application was made is also referred to. That statute provides "that the verdict of the jury, or the judgment of the court, shall be final as to the facts, saving to the court the right of granting a new trial as in other cases, and to either party an appeal in matters of law to the Supreme Court, as in other cases". By this I understand that this court cannot enquire into the sufficiency of the evidence to sustain the verdict of the jury, but that, as in other cases, if the court have allowed illegal testimony to go to the jury, this court has power to correct such error. The introduction of incompetent testimony is as much an error of law as the giving of wrong instructions and it is a matter which the court will look into. The act in relation to new trials has no application, except to the objection urged in this court that the circuit court over-ruled this second application for a new trial. In support of which objection the plaintiff in error should have made out the existence of one of the two state of facts pointed out in the law to justify the granting of a second new trial.—Nothing appears on the record to show either that there was any misbehavior of the jury, or any error of law committed by them. The jury are clearly not responsible for the correctness of the law as given by the court, but a failure to obey its instructions, or a misunderstanding of their meaning as evidenced by the facts found in their verdict, must be the error of law contemplated in this section of the statute, Hill vs Wilkins 4 Mo. Rep. 86,

SEPT. TERM
1839.

Dickey and others
vs.
Malechi.

to, does not apply where the court does not give judgment on the demurrer but suffers the parties to go before a jury on issues made up under the direction of the court, such subsequent action of the court a mounts to an implied withdrawal of the demurrer.

The 10th sect. of the act of 1835, concerning wills and testaments, providing that the verdict of the jury shall be final as to facts, precludes the Sup. Court from enquiring into the sufficiency of the evidence to sustain the verdict of the jury, in proceedings under that sect.; but, as in other cases, if the court permit illegal testimony to go to the jury, the Sup. Court has power to correct such error.

SEPT. TERM
1839.

Dickey and
others
vs.
Malechi.

The introduction of incompetent testimony, is as much an error of law as the giving of wrong instructions, & it is a matter which the Sup. Court will look into.

Believing then that this court is not precluded from examining the legality of the testimony offered on the trial I proceed to notice the portions of the written testimony objected to. The reading of all the depositions was objected to by the defendants below upon the general charge of incompetency and irrelavency. This court has often determined that such general and sweeping objections are insufficient. The party must point out the objections more specifically to authorize this court to interfere. I, however, see nothing illegal or irrelevant in the testimony to which these general objections were taken. But the defendants specified more particularly their objections to the admission of Dickey's deposition; to the reading of this deposition, it appears from the bill of exceptions, defendants objected 'as being both irrelavent and incompetent, the said Dickey being one of the defendants in the cause." The decisions of this court would, I believe sustain me in saying that it does not appear from this record that Dickey was in fact a defendant and that the defendants assertion that he was, in the motion to exclude the deposition, was no proof of this fact and the court might have overruled the motion on the ground that the facts stated in the motion were not true. In Davidson vs. Peck (4 Mo. Rep. 438) it was held that where the circuit court overruled a motion to exclude certain depositions on account of alleged informalities in their execution, and the fact of such informalities existing is not preserved by bill of exceptions, this court cannot know but that the circuit court overruled the motion because the facts stated in the motion did not exist or were falsely stated. In Cozzens vs. Gillespie (4 Mo. Rep. 82.) the defendant offered to read the deposition of one Walter D. Scott, and objections were made to the same on the ground that Scott was interested, and to show the interest, it was proved that 'defendant and one Walter D. Scott had once been partners," it was held that the identity of witness with the person who had once been the partner of the defendant was not proved, and could not be inferred from the identity of names, and the deposition was therefore admissible. These cases seem to establish the insufficiency of the objections here taken to Dickey's testimo-

ny, but I am unwilling to to rest an opinion on the technical difficulty sustained by these cases, conceiving that the facts stated in the motion in the one case and in the bill of exceptions in the other, raised a violent presumption of their truth, especially as they were uncontroverted in the circuit court.

This deposition was admissible, as I think, upon other grounds. The proceeding had in this case, though the heirs at law are made nominal parties, was in truth in the nature of an exparte proceeding. It was a revival of the same proceeding in the circuit court which had been previously had in the county court. Theie can be no question that in the county court the deposition or answer of Dickey, or any other heir, could have been read unless objected to on other grounds than the mere fact that he had been cited as one of the heirs at law, and consequently stood on the record as one of the defendants. In truth, the citation, is for them to appear and show cause &c. why the paper shall not be established. The same legal rules that govern the investigation in the county court must apply in the circuit court. The deposition of Dickey was nothing more nor less than his answer on oath to certain interrogatories propounded by the petitioner. Whether he could be compelled to answer or not is no question raised by this record. No subpœna ad testificandum was issued. The deposition seems to have been voluntarily made, and whether admissible as evidence on the trial or not, must depend, not on the question whether he was a defendant, but whether there was no other objection to him on account of a personal disability or an interest in the event. The interest of Dickey was clearly against the party calling him—he was one of the heirs at law and from the contents of the will as proved by Mr. Grafton, his share of the estate, as heir, would have greatly exceeded the trifling legacy which had been left him in the will. The principle decided in Graham vs. O'Fallon ex'r of Mullanphy, is there applicable. On the ground of interest there could be no objection to Dickey even had he been a party de facto. It may be questioned whether he could not have voluntarily waived the privi-

A devisee, who is also heir at law is a competent witness to establish the contents of a will lost or destroyed, when he has no interest in the event, or when the establishment

lege which that position gave him and his deposition be read. His admission could have been proved and why not his voluntary admission under oath. But whether a party in interest, Dickeys testimony, whether in the shape of a deposition, in answer to interrogatories, or as an answer to the citation following the petition, was good evidence either in the county or circuit court, unless some other objection to it existed besides what is founded on the fact of his being a party.

Any other construction of the law would lead to intolerable consequences. A party seeking to establish a lost will is bound to cite the heirs at law. The relations of a testator are most likely to be the persons most conversant with his intentions and around and about his person and house during his last illness. If the testimony of all these persons must be excluded on the ground of their being parties, and they are necessarily made parties in such proceedings, it must become exceedingly difficult in most cases, and in many cases absolutely impracticable, to establish most of the facts necessary to authorise the probate of a lost will. It places it in the power of the persons most likely to be interested in suppressing the will to shut out all investigation and shield themselves under a rule of law from all responsibility. Such a state of things could never have been contemplated either by our statute law regulating proceedings to establish wills, or sanctioned by the common law rules of evidence. Judgment affirmed.

*Cole for Appellee.*

1st. The circuit court had jurisdiction of the case.

2nd. The defendants as to the facts of the case are concluded by their demurrer on the record.

3rd. That the question "Testamentum vel non," is a question of fact not to be enquired into by the appellate court.

4th. The circuit court has committed no error in matter of law that will justify a reversal of the judgment.

*Scott and Zeigler for Appellants.*

1. That no legal will was ever presented to the county court or clerk thereof to be probated, proved, or established, according to law.

2. There was no legal rejection of the said supposed will by the county court on which to found the application to have the same established in the circuit court on petition.

3. That the circuit court had no jurisdiction over the subject matter presented to them in the petition of said Malechi to have the will established, but that the jurisdiction was exclusively in the county court.

4. There was no evidence that the said supposed will existed at and up to the time of the death of the testator, or that any search or enquiry had been made for the original.

5. That the petition to the circuit court to establish the supposed will did not state that the will existed at the time of the death of the testator, and had not been destroyed or cancelled by himself, and that diligent search had been made therefor.

6. That the said petition to the circuit court did not state the whole provisions of the said supposed will, but the substance of particular provisions and in part only.

7. That there was not sufficient or competent proof of the contents of the said will for they must all be fully proved.

8. That the circuit court admitted improper and incompetent testimony on the trial of the cause in the circuit court.

9. That the circuit court erred in overruling the demurrer filed by the defendants below to the petition and exhibits of the petitioner.

10. That the circuit court erred in sustaining the demurrer of the said Malechi, the petitioner, to the plea in bar of former recovery and adjudication filed by the defendants in the court below.

11. That the circuit court erred in setting aside the non suit for the reason that no sufficient grounds were shewn to justify the court for so doing.

12. That the circuit court ought to have arrested the judgment on the reasons filed in that behalf.

13. That the circuit court in the giving of some and refusing to give others of the instructions asked to be given or

SEPT. TERM
1839.

Dickey and
others
vs.
Malechi.

rejected to the jury on the trial. See bill of exceptions Nos. 2 and 3.

14 That it is entirely too uncertain from the testimony what the several provisions of the will were, even supposing such a will to have once existed.

15. That unless the whole provisions of the will are proved the court cannot give it the proper construction, or carry into effect the intention of the testator according to the statute.

16. That two witnesses are equally necessary to prove the contents of a last written will as in the case of a nuncupative will.